UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JERMAINE M. LOCKETT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:16CV630-PPS |
| | ) | |
| WARDEN,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Jermaine M. Lockett, a *pro se* prisoner, filed a habeas corpus petition challenging his 2011 state conviction and 45 year sentence for dealing cocaine and possession of marijuana. The respondent argues that the habeas corpus petition must be dismissed.

In deciding the petition, I will presume that the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Lockett's burden to rebut this presumption with clear and convincing evidence. *Id*. Mr. Lockett was convicted of operating, or at least participating in the operation of, an open air drug market. Here's the facts as recounted by the state appellate court:

> In the early morning hours of August 26, 2010, Officer Douglas Weaver of the Fort Wayne Police Department was conducting surveillance, on foot, in a "high drug and crime area" in Fort Wayne. Transcript at 159. After watching from a vacant lot in the area for almost an hour, the officer noticed that a "[l]arge amount of vehicular and pedestrian traffic was coming to and from the [sic] 3715 Oliver Street." Id. at 161. Two males standing in front of the residence would make contact with the pedestrians and vehicle occupants who arrived. The males would look

---

[1]The Respondent's name was changed from Superintendent to Warden pursuant to Indiana Code 11-8-2-7.

back and forth down the street before approaching a vehicle that was parked just north of the residence between 3715 and 3709 Oliver Street, and they would again look back and forth down the street before returning to the residence. The men would enter the house with those people, who left the house again shortly.

Lockett was one of the two men walking back and forth to the house. Several times Officer Weaver observed Lockett always approached the passenger side of the Oldsmobile while the second man stayed back a few feet, looking up and down the street. Lockett would reach into the passenger front window each time, but the doors never opened and Lockett never sat in the vehicle.

At one point Officer Weaver saw Lockett retrieve an item from the front passenger side, place the item in Lockett's front pocket, remove another item, and put the removed item in his right hand. When Lockett began to walk away from the Oldsmobile, Officer Weaver approached and instructed Lockett to show his hands. Instead, Lockett began to walk around the back of the Oldsmobile toward the driver's side. When Officer Weaver again ordered Lockett to show his hands. Lockett threw the item from his right hand over the Oldsmobile toward the sidewalk. Officer Weaver then ordered Lockett to the ground.

When Officer Weaver looked into the Oldsmobile he observed "two clear plastic baggies with a green, leafy substance inside them in plain view on the center con[sole in] the front seat area of the vehicle." Id. at 166-67. Based on his training and experience, the officer believed the leafy substance to be marijuana. Officer Weaver then checked the sidewalk in the direction where he had seen Lockett throw something to the ground. There he found a small clear plastic baggie containing a
white chalky substance, which the officer believed to be cocaine.

Officer Weaver arrested Lockett. In the search incident to arrest, officers who had arrived to assist found in Lockett's front right pocket a larger clear plastic back that also contained "the same off[-]white rocky substance that [Officer Weaver] believed to be cocaine." Id. at 168. Officers also found two additional bags in Lockett's small front right pants pocket and $187 in cash on him. And, in a later search of the vehicle, officers found a scale, a pocket knife, and a small container holding a brown substance.

Officers transported Lockett to the police station, where they placed him alone in an investigation room, although they monitored him from another room. They observed him remove an item from his shoe and then place his hand "down the back of his pants toward his buttocks." Id. at 171. When Officer Weaver then entered the investigation room, he asked about the item Lockett removed. Lockett answered that he had placed it in his anus. A subsequent search of Lockett's anus disclosed a small clear baggie containing what later tested to be cocaine.

Officers found an additional baggie in Lockett's sock and $460 cash under the sole of his shoe. Testing of the contents of the plastic baggies found on Lockett and in his vehicle showed that they contained cocaine base. The contents of the bags weighed 1.65 grams, 7.84 grams, .28 gram, 1.14 grams, and .89 grams respectively. Tests also showed that
the green leafy substance found in Lockett's car was marijuana and weighed 1.6 grams.

The State charged Lockett with dealing in cocaine, as a Class A felony, and possession of marijuana, as a Class A misdemeanor. The trial court appointed Gregory Fumarolo as defense counsel. Fumarolo represented Lockett at a pre-trial conference on November 15, 2010, when the December 1 trial date was confirmed. However, Lockett and Fumarolo also alerted the trial court that the two had differences of opinion regarding Lockett's representation. And on November 30, Fumarolo filed a motion to withdraw. The trial court conducted a hearing the same day, after which the court granted the motion to withdraw and, on its own motion, vacated the December 1 trial date. On December 2, public defender Michelle Fennessy Kraus appeared for Lockett. The court reset the trial date for March 24, 2011.

On March 18, 2011, Lockett filed a motion to dismiss the charges for violation of his right to a speedy trial. He also moved for an order in limine as to drug evidence collected at the police station. The court denied the motion to dismiss and, over Lockett's objection, continued the trial date to June 15, 2011. The jury trial commenced on June 15. The trial court admitted the drug evidence over Lockett's objection. During trial Lockett also filed a motion for a mistrial on the ground that one of the jurors had been sleeping. After questioning the juror, the trial court denied the motion, and the trial resumed. The jury found Lockett guilty of both counts as charged. On July 19, Lockett filed a pro se "[m]otion to [w]ithdraw [c]ounsel." Appellant's App. At 5. On July 15, the court

> convened for sentencing, but Lockett insisted that he did not want Kraus to represent him. As a result, and due to Lockett's behavior at the hearing, the trial court continued the sentencing hearing. On July 25 the court reconvened for sentencing and, following argument by counsel, entered judgment of conviction on the verdicts and sentenced Lockett to forty-five years for dealing in cocaine and one year for possession of marijuana, to be served concurrently.

*Lockett v. State*, No. 02A03-1107-CR-376, slip op. at *2-5 (Ind. Ct. App. May 17, 2012); ECF 13-8.

What is not discussed in this recitation of the facts, but which was front and center during the trial, was whether a juror drifted off asleep during the testimony of the state's chemist. As in almost all trials of drug cases, the chemist was called to testify that the substances seized in the case were in fact controlled substances. The chemist's testimony must not have been particularly controversial because defense counsel didn't ask a single question of him on cross-examination. In any event, during the chemist's testimony, it was brought to the court's attention that one of the jurors may have been sleeping. The judge questioned the juror outside the presence of his fellow jurors, and the juror assured the court that he "had heard everything thus far." (Tr. at 224). He repeated that same answer two more times when questioned by Lockett's lawyer. (*Id.* at 224-225.)

The trial judge also allowed the defense lawyer to question the court reporter and the bailiff about what they saw relating to the juror. (Tr. at 313-318). The court reporter testified that she observed the juror with his eyes shut but she couldn't say that he was sleeping. For example, she did not see his head bobbing or anything like that.

4

(Tr. at 314.)   The bailiff said that for two to three minutes "it was obvious the juror's eyes were closed" and "he appeared to be sleeping." He went on to say that "I don't know if he was sleeping or not, but his eyes were closed the whole time." (Tr. at 318).

On direct appeal, Lockett challenged three things: 1) his sentence; 2) whether the trial court should have dismissed the case under Rule 4(b) of the Indiana Criminal Rules; and 3) whether the trial court erred in refusing to grant his motion for a mistrial based on the juror misconduct described above. *Id.* at 2; ECF 13-4 at 2. The Indiana Court of Appeals affirmed his conviction and sentence. ECF 13-8.  Lockett sought transfer to the Indiana Supreme Court, where he challenged the trial court's denial of his motion for mistrial based on juror misconduct as well as the appropriateness of his sentence. ECF 13-9. On August 8, 2012, the Indiana Supreme Court denied transfer. ECF 13-4.

On October 25, 2012, Lockett filed a petition for post-conviction relief. ECF 13-1 at 22; ECF 13-2 at 1. The post-conviction court denied his petition on August 10, 2015, and closed the case. ECF 13-2 at 3. Lockett did not appeal. *Id.* On September 20, 2016, Lockett filed his petition for writ of habeas corpus here, raising forty-three (43) grounds for relief.[2] ECF 1. The envelope containing the petition was postmarked September 15, 2016. ECF 1-6 at 81.

---

[2] Lockett's petition is signed but not dated.

## Discussion

The respondent argues that Lockett's petition should be dismissed because it is untimely. In addition, the respondent argues that all but one of Lockett's claims are procedurally defaulted, and the non-defaulted claim is without merit. I will address each of these contentions in turn.

**A.     The habeas petition is untimely.**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas petitions are subject to a strict one-year statute of limitations, set forth as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

In response to question 16 asking him to explain why the petition is timely (which includes the text of the statute quoted above), Lockett wrote:

> All court proceedings have been conducted for case proceeding process and rejected case cause of issue case:
>
> United States of America v. Darrell T. Jackson, United States District Court for the Northern District of Indiana Fort Wayne Division, 2006 U.S. Dist. Lexis 33795, Case No. 1:05-CR-67, May 25, 2006, decided. May 25, 2006, Filed.

ECF 1 at 29. Let's pause here to try and explain Mr. Lockett's reference to the unrelated case of *United States v. Jackson*. It appears as though Lockett has cited to *Jackson* because it involved the suppression of evidence gathered by Fort Wayne Officer Douglas Weaver, the same officer who arrested Lockett. ECF 1 at 26-28. However, that case has no significance to the timeliness or merits of Lockett's petition. Indeed, the charges against Jackson arose from a July 23, 2005 search. *United States v. Jackson*, Case No. 1:05-cr-67 (N.D. Ind. filed Nov. 16, 2005); ECF 28. Officer Weaver searched and arrested Lockett based on events in 2010.

In the end, nothing in his response, nor in his petition, indicates that State action impeded him from filing sooner or that his claims are based on a newly recognized constitutional right or newly discovered facts. Therefore, the 1-year period of limitation began on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" pursuant to 28 U.S.C. § 2244(d)(1)(A). Here, the Indiana Supreme Court denied transfer in Lockett's direct appeal on August 8, 2012. He did not file a petition for certiorari to the United States

Supreme Court. Nevertheless, he had 90 days to do so and his conviction did not become final until that time expired on November 6, 2012. *See* Sup. Ct. R. 13(1) and *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54; 181 L. Ed. 2d 619, 636 (2012). ("[T]he judgment becomes final . . .when the time for pursuing direct review . . . expires.").

Before the time to seek direct review expired, Lockett filed his petition for post-conviction relief on October 25, 2012. At that time, the statute of limitation had not begun to run and the filing of the petition tolled the statute of limitations while it was pending. 28 U.S.C. § 2244(d)(2); *Newell v. Hanks*, 283 F.3d 827, 832 (7th Cir. 2002). Lockett's post-conviction relief petition was denied on August 10, 2015, and he did not file an appeal. ECF 13-2. As a result, he no longer had "a properly filed application for State post-conviction or other collateral review" and so the tolling ended and the clock began to run the next day. One year later, on August 11, 2016, the deadline expired.

Lockett's petition for writ of habeas corpus was filed on September 20, 2016, forty-four days after the statute of limitations expired. It was postmarked on September 15, 2016, thirty-nine days after the statute of limitations expired. Ordinarily, an inmate gets the benefit of the mailbox rule which, for limitations purposes, is the date he handed his petition to prison officials for mailing. *Jones v. Bertrand*, 171 F.3d 499, 500 (7th Cir. 1999). Here, though, Lockett has not indicated when he submitted his petition for mailing, and therefore he may not invoke the prisoner "mailbox rule" set forth in Rule 3(d) of the Rules Governing § 2254 Cases in the United States District Courts. *Ingram v. Jones*, 507 F.3d 640, 644 (7th Cir. 2007). At best, I can consider the postmark

8

date for purposes of the statute of limitations. Tellingly, Lockett does not claim to have mailed his petition any earlier than September 15, 2016.

Because this habeas corpus petition is untimely, it must be dismissed.[3] Though this might seem harsh, even petitions that are one day late are time barred. *See United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (citation omitted) and *Simms v. Acevedo*, 595 F.3d 774 (7th Cir. 2010).

**B. All but one of Lockett's claims are procedurally defaulted.**

In addition to being untimely, the respondent argues that all but one of Lockett's claims are procedurally defaulted. Before considering the merits of a claim, the court must ensure that the petitioner exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Interests of comity require that the state courts be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review, including with the state court of last resort. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. The companion doctrine of procedural default, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when: (1) the claim was presented to the state courts and was denied on the basis of an adequate and

---

[3] Lockett does not argue that he is entitled to equitable tolling or that failure to consider the merits of his claims would result in a fundamental miscarriage of justice.

9

independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

Lockett did not seek appellate review of the denial of his petition for post-conviction relief. Moreover, none of the claims raised in his petition, except the facts presented under Ground 23 regarding a juror sleeping during his trial, were presented to the Indiana Supreme Court on direct appeal. See ECF 1; ECF 13-9. Consequently, all of Lockett's claims — except Ground 23 — are procedurally defaulted. *Chambers*, 264 F.3d at 737-38. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim on the merits would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's . . . ." *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). Lockett does not assert any basis for me to excuse his procedural default.

Therefore, even if this petition were timely, I could not reach Lockett's procedurally defaulted claims on the merits.

C.     **Ground 23 — the Sleeping Juror**

Even if this petition were timely, the only non-defaulted claim is without merit. In Ground 23, Lockett complains that the trial court should have granted his motion for a mistrial because a juror fell asleep during his trial. "Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotation marks and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking

> in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S.Ct. at 1376 (quotation marks and citations omitted).

At trial, Lockett moved for a mistrial on the basis of juror misconduct — he claimed that one juror (identified as Juror 36) fell asleep. The trial court denied that motion. Lockett raised that issue on appeal, but he claims that the Court of Appeals and Indiana Supreme Court never addressed it. ECF 1 at 14. Lockett is mistaken. The Court of Appeals did address this issue on its merits. ECF 13-8 at 6. Because the State courts adjudicated this claim on the merits, I can only grant habeas corpus if that ruling was an unreasonable determination of the facts or an unreasonable application of the law as announced by the U.S. Supreme Court. 28 U.S.C. § 2254(d). Because Lockett does not acknowledge that the Court of Appeals addressed this issue, he does not articulate whether he believes the Court of Appeals' decision was an unreasonable determination of the facts or an unreasonable application of the law. In an abundance of caution, I will examine both possibilities.

To start, there was no unreasonable application of the law that took place in the State courts. The Seventh Amendment to the United States Constitution guarantees a right to a trial by jury. And that right certainly requires jurors to be awake during the trial. *Whiting v. State*, 516 N.E.2d 1067 (Ind. 1987) (recognizing that juror misconduct in the form of sleeping can be the basis for a valid claim that the right to a fair trial has been denied). Otherwise, the protection of the Seventh Amendment would be illusory.

12

To prevail on this type of issue, it must be demonstrated that the juror was actually inattentive and that the juror's action actually resulted in prejudice. *Smith v. State*, 432 N.E.2d 1363 (Ind. 1982). The Court of Appeals correctly noted that "[a]lleged misconduct, such as a sleeping juror, is a factual issue committed to the trial court's discretion." ECF 13-8 at 7 (citing *Lenover v. State*, 550 N.E.2d 1328, 1332 (Ind. Ct. App. 1990)). The Court of Appeals also cited and applied the correct legal standard set out in *Smith* to determine whether the trial court abused its discretion in concluding that Lockett had not shown actual inattentiveness by Juror 36. ECF 13-8 at 6-7.

There was no unreasonable determination of the facts either. Here are the facts as the Court of Appeals of Indiana explained them:

> Lockett made a timely objection and requested a mistrial when he observed that Juror 36 was asleep during testimony crucial to the defense. Lockett relies on testimony by the trial court reporter and the trial court bailiff regarding their observations of Juror 36 to show that that juror was actually inattentive. The court reporter testified that Juror 36's eyes were closed for at least fifteen minutes and that he was perfectly still each time she looked at him during the testimony of the two chemists. And the trial court bailiff testified that he had seen Juror 36's eyes closed during a two- or three-minute period when both attorneys were having a sidebar with the trial court about the sleeping juror.
>
> But the trial court also questioned Juror 36 after Lockett moved for a mistrial:
>
> > Court: . . . We've noticed [you] closing your eyes and dozing a little bit. We don't know if you're actually dozing or if that's just the way you listen. My question is, after being here, at the close of evidence, you can render a true and accurate verdict?
> >
> > Juror 36: Yes.

13

> Court: Thank you. Thank you so much. Anything else?
>
> Ms. Krause [for the defense]: You have heard everything?
>
> Juror 36: Yes, ma'am.
>
> Ms. Krause: All right. Would you agree that you've – and I'm not trying to pick. I'm just trying to represent my client. It has appeared that your eyes have been closed for at least for approximately 15 minutes during the course of the last, I don't know, it's two people having testified. Am I accurate about that?
>
> Juror 36: Yeah, off and on.
>
> Ms. Kraus: All right. And that you say you've heard everything?
>
> Juror 36: Yes.

*Id.* at 6-7 (citing Trial Transcript at 224-25.)

Lockett does not dispute that the Court of Appeals accurately recited the trial transcript in its opinion. Nor does he claim that there are other trial materials that would help prove his point. Instead, he insists that the trial transcript above shows that Juror 36 was asleep and inattentive. ECF 1 at 14. The Court of Appeals disagreed and concluded that, while Juror 36 had his eyes closed, "he stated that he heard everything and could render a true and accurate verdict." ECF 13-8 at 6-7. Consequently, the Court of Appeals determined that "the trial court did not abuse its discretion when it determined that Lockett had not shown actual inattentiveness by that juror." *Id.* at 8. In light of Juror 36's responses, the Court of Appeals' finding was not unreasonable.

**Certificate of Appealability**

Pursuant to Section 2254 Habeas Corpus Rule 11, I must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Lockett to proceed further. Thus, a certificate of appealability must be denied.

ACCORDINGLY:

Petitioner Jermaine M. Lockett's habeas petition is **DENIED** and a certificate of appealability is **DENIED**.

Lockett's Motion to Appoint Counsel [DE 52] is **DENIED.**

SO ORDERED.

ENTERED: February 22, 2018

                                                  /s/ Philip P. Simon
                                                  Judge
                                                  United States District Court